UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

UNITED STATES OF AMERICA,  No. 13-cr-164 (PJS/LIB)

v.  **REPORT AND RECOMMENDATION**

(1) Mark Allen Garcia,
(2) Patricia Ann McQuarry,

      Defendants.

---

    This matter came before the undersigned United States Magistrate Judge upon the

following motions:[1]

- Defendant Garcia's Motion to Suppress Statements, Admissions, and Answers,
  [Docket No. 36]; and Defendant McQuarry's Motion to Suppress Statements, [Docket
  No. 43] (together, "Motions to Suppress Statements");

- Defendants' Acceptance of Oath of Office, Mandatory Judicial Notice, Affidavit of
  Probable Cause, Notice to Show Cause, and Motion to Dismiss, [Docket Nos. 55, 58]
  (hereinafter, "First Motion to Dismiss");

- Defendants' Notice to Show Cause and Motion for Government to Produce Death
  Certificate of Infant Decedent, [Docket Nos. 57, 60] (hereinafter, "Second Motion to
  Dismiss");

- Defendants' Notice and Demand by Right of Withdrawal of Plea of Not Guilty;
  Special Declaration I -Special Notice of Interests-; Special Declaration II Special
  Notice of Declaration of Revocable Express Trust Indenture, [Docket Nos. 67, 75]

---

[1] Then-counsel for Defendants filed separate suppression motions on their behalf.  However, the remainder of their motions, which they made *pro se*, are identical to each other.  For purposes of this Report and Recommendation, where two docket entries are provided, the first is the motion by Defendant Garcia, and the second is the motion by Defendant McQuarry.

(hereinafter, "Third Motion to Dismiss and to Close Proceedings");

- Defendants' Motion for Judicial Notice Show Cause, [Docket Nos. 70, 78] (hereinafter, "Fourth Motion to Dismiss");

- Defendants' Notice and Demand to Dismiss due to Illegal Grand Jury Proceedings, [Docket Nos. 72, 80] (hereinafter, "Fifth Motion to Dismiss"); and

- Defendants' Notice and Demand to Dismiss for Lack of Criminal Jurisdiction, [Docket No. 73, 81] (hereinafter, "Sixth Motion to Dismiss").

The case has been referred to the Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1. The Court held a hearing on September 27, 2013, regarding the parties' motions for discovery,[2] suppression,[3] and dismissal. For the reasons outlined below, the Court recommends that Defendants' motions for suppression and dismissal, [Docket Nos. 36, 43, 55, 57, 58, 60, 67, 70, 72, 73, 75, 78, 80, and 81], be **DENIED**.

## BACKGROUND

On June 18, 2013, Mark Allen Garcia ("Defendant Garcia") and Patricia Ann McQuarry ("Defendant McQuarry") (together, "Defendants"), were indicted on charges of Conspiracy to Defraud the United States and Making False, Fictitious, or Fraudulent Claims in violation of 18 U.S.C. §§ 286-287. (See Indictment [Docket No. 1]). Defendants made their initial appearances on June 19, 2013, (see Minute Entries [Docket Nos. 5, 6]), and were arraigned on June 28, 2013, at which time each entered a plea of "not guilty." (See Minute Entry [Docket No. 16]). On August 7, 2013, then-counsel for Defendants filed various discovery and suppression motions on Defendant's behalf, including their Motions to Suppress Statements. [Docket Nos. 36, 43].

---

[2] Defendants' discovery motions were the subject of separate Orders. [Docket Nos. 87, 88-89].
[3] At the September 27, 2013, motions hearing, Defendants on the record withdrew their motions to suppress evidence, [Docket Nos. 35, 42], and Defendant McQuarry withdrew here Motion to Suppress Identification Evidence, [Docket No. 41]. (See Minute Entry [Docket No. 86]).

Subsequently, Defendants requested, and were granted, permission to represent themselves.  (See Def. McQuarry Mot. Proceed *Pro Se*, [Docket No. 45]; Def. Garcia *Pro se* Letter [Docket No. 48]; Minute Entry [Docket No. 51]).  Acting *pro se*,[4] Defendants filed a variety of dispositive motions on September 16 and September 26, 2013.[5]  (See Docket Nos. 55 and 58; 57 and 60; 67 and 75; 70 and 78; 72 and 80; 73 and 81).

## I.    Def. Garcia's Motion to Suppress Statements, Admissions, and Answers [Docket No. 36]; and Defendant McQuarry's Motion to Suppress Statements [Docket No. 43]

Defendants generally seek to suppress any and all statements that they made prior to their arrest on the grounds that such statements were made without the benefit of <u>Miranda</u> warning[6] and without the assistance of counsel, in violation of thier rights under the Fifth and Sixth Amendments.  (See Docket Nos. 36, 43).

### A.  Facts[7]

Defendant Garcia spoke via telephone with Internal Revenue Service ("IRS") Agent

---

[4] Because Defendants are proceeding *pro se*, the Court construes their pleadings liberally.  <u>United States v. Bates</u>, 561 F.3d 754, 758 n.3 (8th Cir. 2009) (citing <u>Fed. Express Corp. v. Holowecki</u>, 522 U.S. 389, 402 (2008) ("Even in the formal litigation context, pro se litigants are held to a lesser pleading standard than other parties.").

[5] The motions filed September 26, 2013, were made well after the deadline set by this Court's Order of September 6, 2013.  (See Docket No. 53, at 4 (new motions due September 13, 2013).  However, each of these motions challenges the Court's jurisdiction, and "at any time while the case is pending, the court may hear a claim that the indictment of information fails to invoke the court's jurisdiction." Fed. R. Crim. P. 12(b)(3)(B).  Accordingly, the motions filed September 26, 2013, were not untimely.

[6] <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966).

[7] Neither Defendants nor the Government presented any evidence at the September 27, 2013, hearing regarding the interviews discussed herein.  This factual recitation is drawn from the unsworn representations made by the Government and Defendants at the hearing, which were not materially in dispute with one another.

  "A district court presented with a motion to suppress need not hold an evidentiary hearing as a matter of course, and ahearing is unnecessary if the district court can determine that suppression is unwarranted as a matter of law." <u>United States v. Yielding</u>, 657 F.3d 688, 705 (8th Cir. 2001) (citing <u>United States v. Mims</u>, 812 F.2d 1068, 1073-74 (8th Cir. 1987).  Because Defendants have not identified any specific statements they made that they believe should be suppressed, and have offered no factual or legal grounds for suppression, the Court could recommend denying Defendants' Motions to Suppress Statements, [Docket Nos. 36, 43], solely on the basis that Defendant has failed to meet his burden of production.  <u>United States v. Jones</u>, No. 09-cr-260 (DWF/RLE), 2009 U.S. Dist. LEXIS 112286, at *10 (D. Minn. Oct. 30, 2009) (Erickson, C.M.J.) (citing <u>Mims</u>, 812 F.2d at 1074; and <u>United States v. Quiroz</u>, 57 F. Supp. 2d 805, 822-23 (D. Minn. 1999)), <u>adopted by</u> 2009 U.S. Dist. LEXIS 112176 (D. Minn. Dec. 2, 2009) (Frank, J.).  "Nonetheless, in an abundance of caution, we proceed with address[ing] the merits of the [Defendants'] Motion[s] . . . ." <u>Id.</u> (citing <u>United States v. Edwards</u>, 563 F. Supp. 2d 977, 995 (D. Minn. 2008) (Mayeron, M.J.), <u>adopted by</u> 563 F. Supp. 2d 977, 984 (D. Minn. 2008) (Frank, J.).

Richard Wallin ("Agent Wallin") and IRS Settlement Officer Monty Luhmann ("Officer Luhmann") during the Spring of 2009. The Government argues that these interviews were not custodial.

Defendant McQuarry was interviewed by two special agents from the IRS Criminal Investigative Division on April 15, 2010. That interview was pre-arranged, and took place at a law library. Additionally, on November 23, 2009, Defendant McQuarry, acting in her capacity as "power of attorney" for Defendant Garcia, participated in an in-person interview with a Revenue Agent from the IRS's civil side in a conference room at the Revenue Agent's office in Bloomington, Minnesota. Finally, Defendant McQuarry participated in one or more telephone interviews with IRS civil employees.

**B. Standard of Review**

"[Miranda] prohibits the government from introducing into evidence statements made by the defendant during a custodial interrogation unless the defendant has been previously advised of his [F]ifth [A]mendment privilege against self-incrimination and right to an attorney." United States v. Chipps, 410 F.3d 438, 445 (8th Cir. 2005) (citing Miranda v. Arizona, 384 U.S. 436, 444 (1966)). Miranda warnings are required for official interrogations where a person has been "taken into custody or otherwise deprived of his freedom of action in any significant way." Stansbury v. California, 511 U.S. 318, 322 (1994) (quoting Miranda, 384 U.S. at 444). However, law enforcement officers "are not required to administer Miranda warnings to everyone whom they question." Oregon v. Mathiason, 429 U.S. 492, 495 (1977). "Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him in custody." Id.

### 1. Custody

The Eighth Circuit considers six (6) factors when determining whether a suspect is in custody:

> (1) Whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or (6) whether the suspect was placed under arrest at the termination of the questioning.

United States v. Sanchez, 676 F.3d 627, 630 (8th Cir. 2012) (quoting United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir. 1990)).  Those factors, however, are not exclusive; "[t]he analysis depends upon a review of the totality of circumstances, and '[t]he ultimate test is whether a reasonable person in that position would have felt free to end the interview.'"  Sanchez, 676 F.3d at 630-31 (quoting United States v. Aldridge, 664 F.3d 705, 711 (8th Cir. 2011)).

### 2. Coercion

"Whether or not Miranda is implicated, the Supreme Court has recognized that, in order for a confession to be admitted into evidence, it must be voluntary if it is to satisfy the Fifth Amendment's right against self-incrimination."  United States v. Pankey, No. 07-cr-214, 2007 U.S. Dist. LEXIS 86785, at *11 (D. Minn. Oct. 25, 2007) (DWF/RLE) (Erickson, C.M.J.) (citing Dickerson v. United States, 530 U.S. 428, 433-34 (2000)), adopted by 2007 U.S. Dist. LEXIS 84319 (D. Minn. Nov. 13, 2007) (Frank, J.).  When analyzing voluntariness, the Court considers "whether a defendant's will was overborne by the circumstances surrounding the giving of a confession."  Dickerson v. United States, 530 U.S. 428, 434 (2000).  Furthermore, a statement is involuntary if it "was extracted by threats, violence, or . . . promises, such that the defendant's

will was overborne and his capacity for self-determination critically impaired." United States v. Gallardo-Marquez, 253 F.3d 1121, 1123 (8th Cir. 2001) (quotations and citations omitted). Whether a defendant's will has been overborne is determined by looking at the totality of the circumstances, including both the conduct of law enforcement in exerting pressure to confess on the defendant and the defendant's ability to resist that pressure. United States v. Pierce, 152 F.3d 808, 812 (8th Cir. 1998).

### C. Discussion

#### 1. Defendant Garcia

At the September 27, 2013, motions hearing, Defendant Garcia did not offer any specific argument as to why his telephonic statements made to the IRS should be suppressed; in fact, when invited by the Court to state "whatever reasons you have that you want to make to the court as to why they shouldn't be introduced at trial," he replied: "I see no problem." However, because Defendant Garcia did not withdraw his suppression motion, out of an abundance of caution, the Court will consider whether his statements were custodial, or were coerced.

Applying the Griffin factors, the Court concludes that, with regard to the first and fourth factors, there is insufficient evidence to make a finding either for or against custody, as the record does not suggest one way or the other whether Defendant Garcia was told that his participation was voluntary, or whether investigators used any deceptive stratagems. However, the other four factors clearly favor a finding that Defendant Garcia was not in custody: with regard to the second factor, the investigators clearly did not—could not—restrain his freedom of movement over the telephone; with regard to the third factor, Defendant Garcia "voluntarily acquiesced" to questioning by remaining on the phone and answering the investigators' questions; with regard to the fifth factor, there is no evidence to suggest that Defendant Garcia

6

was in a "police dominated" atmosphere when he spoke on the phone; and with regard to the sixth factor, Defendant Garcia was not arrested at the end of his telephone interviews.

The Court concludes that Defendant Garcia was not in custody when he was interviewed over the telephone by IRS Agent Wallin or Officer Luhmann in the Spring of 2009.  See United States v. Abdi, No. 12-cr-98 (JRT/JJK), 2012 U.S. Dist. LEXIS 157720, at *9 (D. Minn. Oct. 12, 2012) (defendant "plainly was not in custody" during telephone interview) (Keyes, M.J.), adopted by 2012 U.S. Dist. LEXIS 155234 (D. Minn. Oct. 30, 2012) (Tunheim, J.).  Thus, no Miranda warning was necessary.

With regard to coercion, there is no evidence in the record at all to suggest that Defendant Garcia was threatened, or that his will was overborne in any way.

Therefore, the Court recommends that Defendant Garcia's Motion to Suppress Statements, [Docket No. 36], be **DENIED**.

### 2.  Defendant McQuarry

At the September 27, 2013, motions hearing, Defendant McQuarry argued that Agent Wallin said that "someone had to come in and talk with him—he didn't give me a choice," and that another individual whom she identified as Marcus Lane[8] "harassed us until I finally agreed to go talk to him."[9]

With regard to any telephone interviews Defendant McQuarry participated in, the Court finds that those were non-custodial for the reasons articulated in our analysis of Defendant Garcia's telephone interviews, supra.

With regard to the November 23, 2009, interview at the IRS offices in Bloomington,

---

[8] Spelled phoenetically.
[9] Defendant McQuarry's also urged the Court to suppress the content of some of the interviews, in particular certain statements made by various IRS employees during those interviews.  Because her Motion, [Docket No. 43], is to suppress *her own* statements, the Court will not address those requests.

Minnesota, the first, second and fourth <u>Griffin</u> factors, there is insufficient evidence to push the needle one way or the other. However, the other three factors weigh strongly in favor of a finding that Defendant McQuarry was not in custody: with regard to the third factor, Defendant McQuarry was not even the subject of the interview, but participated in order to represent Defendant Garcia as his "power of attorney"; clearly Defendant McQuarry "voluntarily acquiesced" if she attended the interview in place of someone else. Additionally, with regard to the fifth factor, the Court cannot conclude that the atmosphere was "police dominated" when Defendant McQuarry was being interviewed by an employee of the IRS's *civil* division. Finally, with regard to the sixth factor, Defendant McQuarry was not arrested at the conclusion of the interview. Thus, the Court finds that Defendant McQuarry was not in custody when she was interviewed by an IRS civil employee on November 23, 2009, and no <u>Miranda</u> warning was required.

  With regard to the April 15, 2010, interview at a public law library, again there is insufficient evidence in the record with regard to the first, second and fourth <u>Griffin</u> factors. However, the three remaining factors weigh against a finding of custody. Because the interview was scheduled ahead of time, the Court finds that Defendant McQuarry "voluntarily acquiesced" to attending the meeting where she knew she would be participating in questioning, and the third factor weighs against a finding of custody. Additionally, because the interview was on neutral ground and in a public space, with only two IRS agents present, the Court finds that the atmosphere was not "police dominated," and the fifth factor weighs against a finding of custody. Finally, she was not arrested at the conclusion of the interview. Therefore, the Court finds that Defendant McQuarry was not in custody when she was interviewed by two IRS criminal investigators on April 15, 2013. <u>Accord</u> <u>Abdi</u>, 2012 U.S. Dist. LEXIS 157720, at *10 (defendant

who voluntarily agreed to meet with two IRS agents, at least one a criminal investigator, was not in custody).

With regard to coercion, there is no evidence in the record at all to suggest that Defendant McQuarry was threatened, or that her will was overborne in any way.

For these reasons, the Court recommends that Defendant McQuarry's Motion to Suppress Statements, [Docket No. 43], be **DENIED**.

II.   **Acceptance of Oath of Office, Mandatory Judicial Notice, Affidavit of Probable Cause, Notice to Show Cause, and Motion to Dismiss [Docket Nos. 55, 58] ("First Motion to Dismiss")**

In their First Motion to Dismiss, Defendants argue: (1) that this Court lacks personal jurisdiction over them because they are "Minnesotan[s], . . . expressly not [citizens] of the United States ('federal citizens')"; (2) that the United States Attorney's Office for the District of Minnesota lacks the authority to represent the "United States of America"; and (3) that this Court lacks subject matter jurisdiction because it is a "United States District Court," and not a "District Court of the United States."  (See Docket Nos. 55, 58).

A.   **State Citizenship vs. Federal Citizenship**

Defendants' first argument has been repeatedly rejected both by this District and the Eighth Circuit, whose opinions are binding upon this Court.  See United States v. Foster, No. 97-cr-70 (JMR/RLE), 1997 U.S. Dist. LEXIS 17162, at *25-27 (D. Minn. May 27, 1997) (Erickson, M.J.), adopted by Order [Docket No. 153] (July 14, 1997) (Rosenbaum, J); United States v. Gerads, 999 F.2d 1255, 1256 (8th Cir. 1993) (rejecting argument that defendants were "not citizens of the United States, but rather 'Free Citizens of the Republic of Minnesota'"); United

States v. Watson, 1 F.3d 733, 734 (8th Cir. 1993) (citing Gerads).[10]  Because Defendants are residents of the State of Minnesota, "the Federal Courts of this District have personal jurisdiction" over them.  Foster, 1997 U.S. Dist. LEXIS 17162, at *25-26.

### B. The "United States," the "United States of America," and the Authority of the U.S. Attorney

In their second argument, Defendants assert that there is a legal distinction between the "United States," which they contend is the Federal government, and the "United States of America," which they describe as the fifty states acting as one.  Defendants concede that the U.S. Attorney has the authority to represent the "United States," but argue that the U.S. Attorney has no authority to bring suit on behalf of the "United States of America."

Defendants offer no case law[11] in support of their argument that the "United States" and the "United States of America" are legally distinct entities, which has been rejected by, so far as this Court can tell, every court that has considered it.  See, e.g., United States v. Wacker, 173 F.3d 865 (10th Cir. 1999), full text at 1999 U.S. App. LEXIS 5889, at *5.[12]  The "United States" and the "United States of America" are one and the same.

As to the second part of Defendants' argument, Federal law plainly authorizes the U.S. Attorneys to "prosecute for all offenses against the United States."  28 U.S.C. § 547(1).  The

---

[10] See also United States v. Gerhard, 615 F3d 7, 25 and n.9 (1st Cir 2010); United States v. Mundt, 29 F.3d 233, 237 (6th Cir. 1994); United States v. Jones, 983 F.2d 1425, 1428 and n.6 (7th Cir. 1993); United States v. Masat, 948 F.2d 923, 934 (5th Cir. 1991); United States v. Collins, 920 F.2d 619, 629 (10th Cir. 1990); United States v. Nelson (In re Becraft), 885 F.2d 547, 549 n.2 (9th Cir. 1989); United States v. Ward, 833 F.2d 1538, 1539 (11th Cir. 1987); United States v. Stoecklin, 848 F. Supp. 1521, 1526 (M.D. Fla. 1993).

[11] In support of these arguments, Defendant offers only what they refer to as a "press release," and which appears to be a short article whose author styles himself as "Paul Andrew Mitchell, B.A., M.S., Counselor at Law, Federal Witness and Private Attorney General."  (See Def.'s Ex. A [Docket No. 56]).  The Court is not persuaded by the argument contained therein.

[12] See also United States v. Ogilvie, 2013 U.S. Dist. LEXIS 132016, at *3 n.2 (D. Nev. Sept. 5, 2013); United States v. Kemp, 2010 U.S. Dist. LEXIS 67339, at *6-7 (N.D. Ohio July 7, 2010); Mosher v. United States, 2009 U.S. Dist. LEXIS 57508, at *9-13 (W.D. Mich. July 7, 2009); Flores-Rosales v. United States, 2009 U.S. Dist. LEXIS 54460, at *7-8 (W.D. Tex. June 3, 2009); Russell v. United States, 2008 U.S. Dist. LEXIS 89753, at *4 (S.D. Ill. Nov. 5, 2008); Csikortos v. United States, 2007 U.S. Dist. LEXIS 87058, at *5 (W.D. Va. Nov. 26, 2007); United States v. Wright, 1998 U.S. Dist. LEXIS 20777, at *12 (E.D. Cal. Dec. 21, 1998).

Indictment charges Defendants with offenses against the United States, in particular, Conspiracy to Defraud the United States and Making False, Fictitious, or Fraudulent Claims in violation of 18 U.S.C. §§ 286-287.  (<u>See</u> Indictment [Docket No. 1]).  Thus, the U.S. Attorney's Office was acting within its statutory authority when it brought the Indictment against Defendants.  <u>United States v. Ogilvie</u>, 2013 U.S. Dist. LEXIS 132016, at *3 n.2 (D. Nev. Sept. 5, 2013); <u>United States v. Kemp</u>, 2010 U.S. Dist. LEXIS 67339, at *6-7 (N.D. Ohio July 7, 2010); <u>Corley v. Oates</u>, 2005 U.S. Dist. LEXIS 8091, at *2-3 (S.D. Ala. Apr. 12, 2005).

### C.  The "United States District Court," and the "District Court of the United States"

Finally, although Defendants and the Government agree that 18 U.S.C. § 3231 confers Federal criminal jurisdiction upon "[t]he district courts of the United States,"[13] Defendants argue that there is a legal distinction between a "District Court of the United States," which they acknowledge has "[s]tatutory, regulatory, and constitutional authority . . . to hear a criminal case against a Minnesotan, a Union State Citizen when the alleged crime was committed inside the state zone," and a "United States District Court," which they suggest has jurisdiction only within the "federal zone."  (1st Mot. Dismiss [Docket Nos. 55, 58], at 3-4).

The U.S. Constitution provides: "The judicial power of the United States, shall be vested in one Supreme Court, and in such inferior Courts as the Congress shall from time to time ordain and establish."  U.S. Const., art. III, § 1.  The Constitution also grants Congress authority to "lay and collect taxes on incomes."  U.S. Const. amend. XVI.  In order to collect taxes, Congress has enacted statutes conferring jurisdiction on the Federal district courts.  28 U.S.C. § 1340 ("The district courts shall have original jurisdiction of any civil action arising under any Act of

---

[13] <u>Compare</u> 3d Mot. Dismiss [Docket Nos. 67, 75], at 3 ("When it comes to criminal jurisdiction, the controlling statute is 18 <u>U.S.C. 3231</u>.  This statute grants original jurisdiction to the District Courts of the United States . . ." (emphasis in original).); <u>with</u> Gov't's Resp. to Def.'s *Pro Se* Pretrial Motions [Docket No. 61], at 4 ("United States Code, Section 3231 grants the district courts of the United States jurisdiction over all offenses against the laws of the United States.").

Congress providing for internal revenue . . . .").  Congress has also conferred upon the Federal

district courts "original jurisdiction, exclusive of the States, of all offenses against the laws of the

United States."  18 U.S.C. § 3231; see also United States v. Rosnow, 977 F.2d 399, 412 (8th Cir.

1992) ("Title 18 U.S.C. § 3231 grants jurisdiction to district courts over all offenses against the

laws of the United States.").

      As with their other arguments, Defendants offer no legal authority to counter the

numerous cases in which this argument has been rejected.  See United States v. Marks, 530 F.3d

799, 811 (9th Cir. 2008); Magritz v. Ozaukee County, 894 F. Supp. 2d 34, 39 n.3 (D.D.C. 2012);

Lake v. Dep't of Treasury, 905 F. Supp. 1061, 1062 (N.D. Ga. 1995).[14]

      Accordingly, this Court recommends that Defendants' First Motion to Dismiss, [Docket

Nos. 55, 58], be **DENIED**.


### III.    Notice to Show Cause and Motion for Government to Produce Death Certificate of Infant Decedent
        **[Docket Nos. 57, 60] ("Second Motion to Dismiss")**

      Defendants seek an order compelling the Government "to produce the Death Certificate

of the 'infant decedent' [Defendant] . . . pursuant to IRC 21.7.13.3.2 2., which states 'An infant

is the decedent of an estate or grantor, owner or trustor of trust, guardianship, receivership or

custodianship that has yet to receive their SSN."  (See Docket Nos. 57, 60, at 1-2).  If the

Government is unable to produce such a death certificate, Defendants suggest that they are

---

[14] See also United States v. Ealy, 2007 U.S. App. LEXIS 22944, at *5 (6th Cir. Apr. 20, 2007); United States v. Barrett, 1997 U.S. App. LEXIS 5657, at *3 (7th Cir. Mar. 18, 1997); Ogilvie, 2013 U.S. Dist. LEXIS 132016, at *3 n.2; Fowler v. United States Dep't of Justice, 2013 U.S. Dist. LEXIS 49481, at *7 (D. Hawaii Apr. 5, 2013); United States v. Berryman, 2012 U.S. Dist. LEXIS 111073, at *8, 15-16 (D. Colo. Aug. 8, 2012); United States v. Hobbs, 2012 U.S. Dist. LEXIS 88925, at *27-29, 41-42 (E.D. Mo. May 15, 2012), adopted by 2012 U.S. Dist. LEXIS 88946 (E.D. Mo. June 27, 2012); Shipley v. United States, 2007 U.S. Dist. LEXIS 5145, at *8 (D. Kan. Jan. 18, 2007); United States v. Dutson, 2006 U.S. Dist. LEXIS 97645, at *3 (D. Ariz. Mar. 8, 2006); United States v. Stephenson, 2005 U.S. Dist. LEXIS 44850, at *3-4 (W.D. Wash. Oct. 18, 2005); DeVries v. McDonald, 2002 U.S. Dist. LEXIS 11708, at *4 (E.D. Cal. Apr. 8, 2002).

entitled to have the charges against them in the Indictment dismissed.  (Id.).

The Government represented that it did not know what Defendants were asking for, but that it was unaware of any responsive materials.  (Gov't's Resp. to Def.'s *Pro Se* Pretrial Mots. [Docket No. 61, 63] ("hereinafter Gov't's Resp. *Pro Se* Mots."), at 3).

Defendants' reference to "IRC 21.7.13.3.2 2" appears to be a citation to the Internal Revenue Service Manual (the "Manual" or "IRM"),[15] Part 21, Chapter 7, Section 13, which concerns assignment of Employer Identification Numbers ("EINs").  In a subsection of Section 13 concerning applications for EINs, the Manual explains that ordinarily a trust seeking an EIN will be required to provide the Social Security Number, Individual Tax Identification Number, or EIN "of the grantor, owner, or trustor (also known as the responsible party).  IRM 12.7.13.3.2.2 1, available at http://www.irs.gov/irm/part21/irm_21-007-013r.html.  (Last viewed October 2, 2013).  However, the IRM also cautions that there may be instances where a grantor, owner, or trustor does not have a Social Security Number, and provides as an example, when "[a]n infant is the decedent of an estate or grantor, owner or trustor of a trust, guardianship, receivership or custodianship that has yet to receive an SSN."  IRM 12.7.13.3.2.2 2, available at http://www.irs.gov/irm/part21/irm_21-007-013r.html.  (Last viewed October 2, 2013).  In other words, the citation that Defendants provide applies only when a trust has applied for an EIN, and the trust's grantor, owner, or trustor died as an infant before receiving a Social Security Number.

Defendants do not assert that they have applied for an EIN on behalf of a trust, or, if they had, why such an application would be relevant to the charges alleged in the Indictment.  Therefore, the Court recommends that Defendants' Second Motion to Dismiss, [Docket Nos. 57, 60], be **DENIED**.

---

[15] The Internal Revenue Manual is available online at http://www.irs.gov/irm/.  (Last viewed October 2, 2013.)

IV.  **Notice and Demand by Right of Withdrawal of Plea of Not Guilty; Special
     Declaration I -Special Notice of Interests-; Special Declaration II Special Notice of
     Declaration of Revocable Express Trust Indenture
     [Docket Nos. 67, 75] ("Third Motion to Dismiss and to Close Proceedings")**

In these Motions, Defendants (1) argue again that this Court lacks jurisdiction because
they are not "federal citizens" and not within the District of Columbia; (2) seek to withdraw their
pleas of not guilty; (3) describe "trusts" Defendants claim to have created, and against which
they say the Government may claim any funds it believes that Defendants wrongly acquired; and
(4) request that all files in this case be sealed, and that all proceedings be closed to the public.
(See Docket Nos. 67, 75).

**A.  Jurisdiction**

Defendants again argue that this Court lacks subject matter jurisdiction because they are
"Minnesotan[s], expressly not [citizens] of the United States ('federal citizens')"; because they
are "nondomestic to the District of Columbia," (Id. at 1, 7); and because this Court is a "United
States District Court" with authority only in the "federal zone."  (Id. at 3).

The Court previously addressed, and rejected, these arguments in Part II.A and Part II.C,
supra.

**B.  Withdrawal of Not-Guilty Plea**

Although the Defendants style their pleadings as motions to withdraw their not-guilty
pleas, even that aspect of these motions in fact speak to the Court's jurisdiction.  Defendants
state that they wish to withdraw their pleas because they did not know when they were arraigned
that "entering a plea into the court record would subject me to the court's jurisdiction."  (3d Mot.
Dismiss [Docket Nos. 67, 75], at 2).  In other words, Defendants do not seek to withdraw their
not-guilty pleas in order that they may enter a different plea; but rather, they believe that by
withdrawing their not-guilty pleas they will strip this Court of personal jurisdiction over them.

14

Defendants are mistaken. The Court does not acquire personal jurisdiction over a defendant by virtue of that defendant's entering a plea; rather, "[i]n a criminal case 'a court has exclusive personal jurisdiction over any party who appears before it, regardless of how that appearance was effected.'" United States v. Crawford, No. 05-cr-294 (JRT/AJB), 2006 U.S. Dist. LEXIS 62311, at *4 (D. Minn. Aug. 30, 2006) (Tunheim, J.) (quoting United States v. Warren, 610 F.2d 680, 684 n.8 (9th Cir. 1980)); see also Marks, 530 F.3d at 810 ("the district court had personal jurisdiction over [the defendant] by virtue of [the defendant]'s having been brought before it on a federal indictment charging a violation of federal law"); United States v. Rendon, 354 F.3d 1320, 1326 (11th Cir. 2003) ("A federal district court has personal jurisdiction to try any defendant brought before it on a federal indictment charging a violation of federal law."); cf. United States v. Stuart, 689 F.2d 759, 762 (8th Cir. 1982) ("It is well established that irregularities in the manner in which a defendant is brought into custody does not deprive the court of personal jurisdiction over the defendant in a criminal case.").

Additionally, Defendants are not prejudiced by this Court denying their request to withdraw their not-guilty pleas, because even if the Court was to interpret their motions as refusals to enter a plea, the Court would be required to enter not-guilty pleas on their behalf. Fed. R. Crim. P. 11(a)(4) ("If a defendant refuses to enter a plea . . ., the court must enter a plea of not guilty.").

### C. Defendants' "Trusts"

Next, Defendants assert that they have established "trusts" against which they have given the United States ten days to make a claim if it believes Defendants improperly obtained tax refunds. (See 3d Mot. Dismiss [Docket Nos. 67, 75], at 3-14; see also Docket Nos. 68-69 and 84 (Garcia), and Docket Nos. 76-77 and 85 (McQuarry) ("trust" documents)). As Defendant

McQuarry stated during the September 27, 2013, motions hearing: "If the United States feels that . . . they're the real party in interest and they feel that we owe them money, yes absolutely, they make a claim on this trust."

Defendants assert that, having established these "trusts," the tax filings upon which the charges in the Indictment are based "have been withdrawn from the general public, re-deposited as special changing the nature and character to that of private and any alleged debt has been merged/extinguished and terminated through the higher equitable title through a private express trust, correcting any mistake due from ignorance." (3d Mot. Dismiss [Docket Nos. 67, 75], at 4). It is unclear to the Court precisely how Defendants believe such "trusts" operate; however, what is clear is that Defendants believe that, by establishing these "trusts," they have allowed the Government to reclaim any alleged losses, and, therefore, "[t]he Indictment has no merit and is moot. . . . The United States Attorney whether knowingly or unknowingly continues to prosecute claims that have already been settled . . . ." (Id. at 3-4).

This argument has no merit. Defendants are charged with making fraudulent tax claims and conspiring to defraud the United States. (See Indictment [Docket No. 1]). If the Government proves the charges in the Indictment, then any efforts that Defendants make to repay any ill-gotten gains, whether through "trusts"[16] or by other means, may be factors to consider in sentencing, but they do not "moot" the underlying offense.

**D. Closing Proceedings to the Public**

Finally, Defendants state that this case should be "CLOSED and sealed from the press and the public to protect the [Defendants] and the public conscience." (3d Mot. Dismiss [Docket

---

[16] In any event, on the present record, the Court notes there is no basis in law or fact demonstrated by Defendants to show that any valid "trust" whatsoever exists against which the IRS could make a claim even if it were of a mind to do so. The arguments made by Defendants and the documents they have submitted to the Court are all entirely nonsensical and unintelligible as to showing any reasonable or credible rationale or basis for believing in the Defendants' ability to pursue the creation of any such alleged trusts.

Nos. 67, 75], at 9 (emphasis in original)).[17]

The U.S. Supreme Court has affirmed the right of the public to attend trials.  <u>Richmond Newspapers v. Virginia</u>, 448 U.S. 555, 580 (1980) ("We hold that the right to attend criminal trials is implicit in the guarantees of the First Amendment; without the freedom to attend such trials, which people have exercised for centuries, important aspects of freedom of speech and of the press could be eviscerated" (footnote, citation, and quotation omitted).); <u>accord</u> <u>United States v. Thunder</u>, 438 F.3d 866, 867 (8th Cir. 2006) ("We have an open government, and secret trials are inimical to the spirit of a republic, especially when a citizen's liberty is at stake. The public, in a way, is necessarily a party to every criminal case.").  Although this right is "not absolute[,] . . . the circumstances under which the press and the public can be barred from a criminal trial are limited."  <u>Globe Newspaper Co. v. Superior Court</u>, 457 U.S. 596, 606 (1982).[18]  To date, Defendants have not offered any specific, much less valid, reason as to *why* the files and proceedings in this case should be closed to the public.

Therefore, the Court recommends that Defendants' Third Motion to Dismiss and to Close Proceedings, [Docket Nos. 67, 75], be **DENIED**.

## V.    Motion for Judicial Notice Show Cause
[Docket Nos. 70, 78] ("Fourth Motion to Dismiss")

Defendants ask the Court to take judicial notice of a document entitled "Apostolic Letter Issued *Motu Proprio* of the Supreme Pontiff Francis on the Jurisdiction of Judicial Authorities of the Vatican City State in Criminal Matters" (hereinafter, the "Apostolic Letter").  (<u>See</u> Docket

---

[17] <u>See also</u> 3d Mot. Dismiss [Docket Nos. 67, 75], at 13 ("NOTICE OF JURISDICTION AND LAW FORUM - Equitable relief will be in the form of a private Ex Parte, in camera hearing with the Chancellor governed by the original inherent exclusive equity jurisdiction where trusts reside, with the exclusion of the press and the public" (emphasis in original).).

[18] The Eighth Circuit in <u>Thunder</u> observed that, "[w]hile the Supreme Court has held that the right of access to a criminal trial is 'not absolute,' the Court has never actually upheld the closure of a courtroom during a criminal trial or any part of it . . . ."  438 F.3d at 867.

Nos. 70, 78).[19]  Additionally, Defendants asks that:

> this court, all government officials, [and] all public servants employed by the
> United States Corporation . . . SHOW CAUSE . . . as to why they are not under
> the Roman Curia connected to the Vatican through law therefore answerable to
> the Vatican City State and why this court shold not obey Holy See Pope Francis's
> Pontificate entered into force on September 1, 2013 and adjudicate this case in
> equity, settling the account for the benefit of the [Defendants].

(Id. at 2).  During the September 27, 2013, motions hearing, Defendants argued that the purpose

of the motion was to suggest that, if the case was to proceed, it should proceed "in equity" in

accordance with the Apostolic Letter.[20]

To the extent that Defendants are asking the Court to take judicial notice of the Apostolic

Letter, the Court has reviewed the document.  However, the Apostolic Letter has no bearing on

the present case.  As set forth in Part II.C, supra, this Court's authority is derived from the U.S.

Constitution and from statutes duly enacted by Congress and signed by the President.

Defendants cite no language in either the Constitution or in any statute that would place this

court "under the Roman Curia."

Consequently, to the extent that Defendants by their Fourth Motion to Dismiss, [Docket

Nos. 70, 78], seek dismissal of the charges in the Indictment, the Court recommends that the

Motion be **DENIED**.

## VI.    Notice and Demand to Dismiss due to Illegal Grand Jury Proceedings
   [Docket Nos. 72, 80] ("Fifth Motion to Dismiss")

Defendants argue that the charges in the Indictment should be dismissed because the

---

[19] This document is attached to Defendant's Motion, (see Docket No. 70, at 6-7), and available on the Vatican's
website, at http://www.vatican.va/holy_father/francesco/motu_proprio/documents/papa-francesco-motu-
proprio_20130711_organi-giudiziari_en.html.  (Last viewed Oct. 2, 2013).
[20] Defendants also argued at the motions hearing that the Federal government is a "corporation."  Although the
Court fails to see the relevance of such a claim, the Court also notes that it, too, has been rejected by other courts.
See Berryman, 2012 U.S. Dist. LEXIS 111073, at *15-16.

Government never provided them with notice of the grand jury investigation. (See Docket Nos. 72, 80). In particular, Defendants argue:

> By failing properly to notify the Defendant[s] of allegations of complaint and intent to present matters to a grand jury for consideration, the United States Attorney effectively deprived Defendant[s] of: (1) the Fourth Amendment Right to have access to affidavits of complaint; (2) the Sixth Amendment Right to interview witnesses against [them]; (3) the Sixth Amendment Right to have the assistance of Counsel during the proceedings; and (4) the Right to challenge the jury selection process and/or for the qualifications of individual jury candidates.

(Id. at 2).

The Fourth Amendment and Sixth Amendment rights that Defendants invoke do not attach at the grand jury stage. With regard to the Fourth Amendment, "[a] Defendant has no right under the Fourth Amendment to have access to the affidavits of complaint." United States v. Summers, 2007 U.S. Dist. LEXIS 28797, at *9 (E.D. Mich. Apr. 19, 2007) (citing United States v. Calandra, 414 U.S. 338, 354 (1974) (rejecting argument that Fourth Amendment exclusionary rule applies to grand jury proceedings)).

Additionally, the Sixth Amendment right to confront witnesses does not attach at the grand jury stage, as it is "a *trial* right." Pennsylvania v. Ritchie, 480 U.S. 39, 53 (1987) (emphasis in original) (citing California v. Green, 399 U.S. 149, 157 (1970) ("[I]t is this literal right to 'confront' the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause"), and Barber v. Page, 390 U.S. 719, 725 (1968) ("The right to confrontation is basically a trial right")).[21] That is because:

> the grand jury sits not to determine guilt or innocence, but to assess whether there is an adequate basis for a criminal charge. That has always been so; and to make

---

[21] Defendants also claim that, "[i]n the grand jury forum, prospective defendants enjoy the Rights articulated in Rule 5.1(a), Federal Rules of Criminal Procedure, pertaining to preliminary examinations, to wit: 'The defendant may cross-examine adverse witnesses and may introduce evidence.'" (5th Mot. Dismiss [Docket Nos. 72, 80], at 2). The language cited by Defendants actually appears in Fed. R. Crim. P. 5.1(e), which governs preliminary hearings, *not* grand jury proceedings. In fact, as noted in fn.22, infra, the Federal Rules of Criminal Procedure do not allow for either the subject of a grand jury investigation or that subject's attorney to even be present, much less to confront witnesses. See Fed. R. Crim. P. 6(d)(1).

the assessment it has always been thought sufficient to hear only the prosecutor's side.

Foster, 1997 U.S. Dist. LEXIS 17162, at *16-17 (quoting United States v. Williams, 504 U.S. 36, 51 (1992).

Likewise the Sixth Amendment right to counsel does not attach at the grand jury stage. "The Sixth Amendment right to counsel does not attach until 'the government's role shifts from investigation to accusation.'" Perry v. Kemna, 356 F.3d 880, 895 (8th Cir. 2004) (quoting Moran v. Burbine, 475 U.S. 412, 430 (1986), and United States v. Ingle, 157 F.3d 1147, 1151-52 (8th Cir. 1998)). "The Supreme Court has identified such point as being when prosecution has commenced 'by way of formal charge, preliminary hearing, indictment, information or arraignment.'" Id. (quoting United States v. Gouveia, 467 U.S. 180, 188 (1984)).[22]

With regard to the right to challenge the grand jury selection process, Defendants cite Fed. R. Crim. P. 6(b)(1), which provides for challenges to a grand jury. (5th Mot. Dismiss [Docket Nos. 72, 80], at 1-2). However, Defendants misunderstand Rule 6(b)(1). They suggest that, by failing to provide notice either before or during the grand jury investigation, the Government deprived them of the ability to challenge the grand jury. (5th Mot. Dismiss [Docket Nos. 72, 80], at 3). "The Rule does not, however, provide the defendant with an opportunity to challenge the grand jury prior to indictment. Rather, a defendant may challenge the grand jury composition after his arrest and prior to trial." United States v. Stephenson, 2005 U.S. Dist. LEXIS 44850, at *6-7 (W.D. Wash. Oct. 18, 2005). Thus, the fact that Defendants did not have notice of the grand jury proceedings *during* those proceedings did not in any way impair their

---

[22] Additionally, with respect to Defendants' Sixth Amendment claims, the Federal Rules of Criminal Procedure limit who may be present while a grand jury is in session to: "attorneys for the government, the witness being questioned, interpreters when needed, and a court reporter or an operator of a recording device." Fed. R. Crim. P. 6(d)(1). No provision is made for the presence of either a potential defendant, or for that person's attorney, or for any person to confront witnesses.

rights.

Defendants also cite 28 U.S.C. § 1867(d), which provides that a court may dismiss an indictment upon a finding "that there has been a substantial failure to comply with the provisions of this title in selecting the grand jury."  (5th Mot. Dismiss [Docket Nos. 72, 80], at 2-3). However, in order to obtain relief under § 1867(d), a party must bring a motion "containing a sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions of this title."  28 U.S.C. § 1867(d).  Defendants have made no such motion, and have provided this Court with no such sworn statement of facts.  See Ealy, 2007 U.S. App. LEXIS 22944, at * 4 (District Court did not err in denying defendant's request for § 1867(d) relief in part because he "failed to file a supporting affidavit as required").

Because the Constitutional rights Defendants assert do not attach at the grand jury stage, and because Defendants have neither brought the necessary motion nor made the necessary factual showing to avail themselves of the statutory remedy they seek, this Court recommends that their Fifth Motion to Dismiss, [Docket Nos. 72, 80], be **DENIED**.


**VII.    Notice and Demand to Dismiss for Lack of Criminal Jurisdiction**
        **[Docket Nos. 73, 81] ("Sixth Motion to Dismiss")**

By this motion, Defendants yet again reassert their previously rejected arguments with respect to both subject matter jurisdiction and personal jurisdiction.  (See Docket Nos. 73, 81). Despite being significantly longer (in this instance, the Motions and Memoranda run 21 pages and 37 pages, respectively) than their First Motion to Dismiss and their Third Motion to Dismiss and to Close Proceedings, their present Sixth Motion to Dismiss contains substantially the same arguments as those other prior motions, which this Court previously rejected in Part II and Part

IV, supra.[23]

Therefore, this Court recommends that Defendants Sixth Motion to Dismiss, [Docket Nos. 73, 81], be **DENIED**.


## VIII.   Conclusion

Based on the foregoing, and all the files, records and proceedings herein, **IT IS**

**HEREBY RECOMMENDED**:

1. That Defendant Garcia's Motion to Suppress Statements, Admissions, and Answers, [Docket No. 36], and Defendant McQuarry's Motion to Suppress Statements, [Docket No. 43], be **DENIED**, as set forth above;

2. That Defendants' Acceptance of Oath of Office, Mandatory Judicial Notice, Affidavit of Probable Cause, Notice to Show Cause, and Motion to Dismiss, [Docket Nos. 55, 58], be **DENIED**, as set forth above;

3. That Defendants' Notice to Show Cause and Motion for Government to Produce Death Certificate of Infant Decedent, [Docket Nos. 57, 60], be **DENIED**, as set forth above;

4. That Defendants' Notice and Demand by Right of Withdrawal of Plea of Not Guilty; Special Declaration I -Special Notice of Interests-; Special Declaration II Special Notice of Declaration of Revocable Express Trust Indenture, [Docket No. 67, 75], be **DENIED**, as set forth above;

---

[23] Additionally, the Court notes that Defendants Memoranda, [Docket Nos. 74, 82], appear to be identical to one that Paul Andrew Mitchell, (see fn. 11, supra), purports to have filed in United States v. Gilbertson, 131 F.3d 144 (8th Cir. 1997), full text at 1997 U.S. App. LEXIS 34479.  In that case, the Eighth Circuit affirmed the defendant's conviction, and "reject[ed] as completely meritless" the defendant's jurisdictional arguments, which appear to be repeated verbatim in Defendants' Memoranda in the present case.

5.    That Defendant's Motion for Judicial Notice Show Cause [Docket Nos. 70, 78] be

**DENIED**, as set forth above;

6.    That Defendants' Notice and Demand to Dismiss due to Illegal Grand Jury

Proceedings, [Docket Nos. 72, 80], be **DENIED**, as set forth above; and

7.    That Defendants' Notice and Demand to Dismiss for Lack of Criminal Jurisdiction,

[Docket No. 73, 81], be **DENIED**, as set forth above.

Dated: October 4, 2013                                      s/Leo I. Brisbois
                                                            Leo I. Brisbois
                                                            U.S. Magistrate Judge

## N O T I C E

In light of the pending trial date of October 29, 2013, the Court now finds it must reduce the time that the parties are allowed to file, and to respond to, objections to this Report and Recommendation.

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by October 11, 2013**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within **seven days** of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.