UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 13-CR-0164(2) (PJS/LIB) |
| Plaintiff, | |
| v. | ORDER |
| PATRICIA ANN MCQUARRY, | |
| Defendant. | |

Kimberly A. Svendsen and Timothy C. Rank, UNITED STATES ATTORNEY'S OFFICE, for plaintiff.

Daniel L. Gerdts, for defendant.

Defendant Patricia Ann McQuarry was indicted for conspiracy to defraud the United States in violation of 18 U.S.C. § 286 and for making false, fictitious, or fraudulent claims upon or against the United States in violation of 18 U.S.C. § 287. Not long after the indictment in this case was filed, McQuarry notified the Court that she wanted to represent herself during these proceedings. *See* ECF No. 49. The Court conducted a hearing pursuant to *Faretta v. California*, 422 U.S. 806 (1975), and determined that McQuarry was mentally competent and capable of waiving her right to counsel. *See* Faretta Hr'g Tr. at 28 [ECF No. 93]. Recent developments in this case have, however, given the Court "sufficient doubt about the accused's competence," and thus the Court has decided to order a psychiatric or psychological examination of McQuarry, followed by a hearing on the question of whether McQuarry is competent to stand trial. *United States v. Casteel*, 717 F.3d 635, 641 (8th Cir. 2013) (quotation omitted). This order explains the basis for the Court's decision.

I. LEGAL STANDARD

"The conviction of an incompetent person is a violation of due process . . . ." *United States v. Rickert*, 685 F.3d 760, 765 (8th Cir. 2012) (citing *Pate v. Robinson*, 383 U.S. 375, 378 (1966)). A defendant is competent to stand trial if she has (1) "a rational as well as factual understanding of the proceedings against [her]" and (2) "is able to consult with [her] lawyer with a reasonable degree of rational understanding." *United States v. Ghane*, 593 F.3d 775, 780 (8th Cir. 2010) (quotations omitted).

"To safeguard this due process guarantee, the Supreme Court has established a separate procedural due process right to a competency hearing." *Reynolds v. Norris*, 86 F.3d 796, 800 (8th Cir. 1996) (citing *Drope v. Missouri*, 420 U.S. 162, 172 (1975)). This right to a competency hearing is triggered whenever the Court becomes aware of evidence that raises a "sufficient doubt about the accused's competence." *Casteel*, 717 F.3d at 641 (quotation omitted). The Eighth Circuit has identified a number of factors that a court may consider in determining whether such "sufficient doubt" exists, including evidence of irrational behavior by the accused, the accused's demeanor before the court, and any prior medical opinions about the competence of the accused. *See Reynolds*, 86 F.3d at 800. A court may also consider any concerns about the accused's competence that have been expressed by her attorney, although such concerns are not sufficient by themselves to establish the "sufficient doubt" that triggers the need for a competency hearing. *Id*.

If a court finds that a competency hearing is necessary, "the court may order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court" prior to the hearing. 18 U.S.C. § 4241(b). *See also*

Fed. R. Crim. P. 12.2(c)(1)(A) ("The court may order the defendant to submit to a competency examination under 18 U.S.C. § 4241."). In addition, "the court may commit the person to be examined for a reasonable period . . . to the custody of the Attorney General for placement in a suitable facility" for performing the evaluation. 18 U.S.C. § 4247(b). That "reasonable period" of commitment may not exceed 30 days, unless the director of the facility at which the defendant is committed applies for an extension, in which case the defendant may be committed for an additional period not to exceed 15 days. *Id*.

## II. ANALYSIS

### A. Competency Hearing

As explained above, a defendant is not competent to stand trial unless she meets two criteria. First, the defendant must have "a rational as well as factual understanding of the proceedings against [her] . . . ." *Ghane*, 593 F.3d at 780 (quotation omitted). Second, the defendant must be "able to consult with [her] lawyer with a reasonable degree of rational understanding." *Id*. (quotation omitted). The Court is concerned that neither of these is true with respect to McQuarry. Accordingly, a hearing to establish McQuarry's competence is necessary.

#### 1. Understanding of the Proceedings

Throughout these proceedings, McQuarry has relied on the type of nonsensical arguments commonly made by tax protesters. *See, e.g.*, ECF No. 75 (document putatively authorizing "trust" to reimburse the government for any loss allegedly caused by McQuarry); ECF No. 79 (document seeking to withdraw plea of not guilty in effort to deprive the Court of jurisdiction); ECF No. 81 (memorandum alleging that the Court lacks jurisdiction over this case because the government has not proven that the crimes alleged of McQuarry took place on property owned by

the federal government).  The Court is familiar with these arguments, as it has tried a number of tax-protester cases.  The Court obviously recognizes that a defendant can be competent even though she makes frivolous arguments; indeed, in the Court's prior tax-protester cases, the Court has never been concerned about the competence of any of the defendants.  For several reasons, though, the Court does have such concern about McQuarry.

To being with, even by tax-protester standards, McQuarry's arguments have been strange and seem to have become stranger.  To cite just a few examples:

- As noted, McQuarry insisted on acting as her own attorney in these proceedings after saying that she had "been made aware of the dangers and disadvantages of self-representation."  ECF No. 49 at 1.  But McQuarry recently filed a document in which she notified the Court that "i am a woman, created by God and to represent myself would be breaking God's second commandment . . ." and that "i believe representing myself is to put on a false mask, a graven image, a false god . . . ."  ECF No. 141 at 1 (sic).

- In a document putatively addressed to (among others) Minnesota governor Mark Dayton, Acting Commissioner of Social Security Carolyn W. Colvin, and Minnesota Department of Transportation Commissioner Charles A. Zelle, McQuarry sought to "release all titles, interest, and duties in the Title and/or Entity known as, 'PATRICIA ANN MCQUARRY' . . . ."  ECF No. 149 at 2 (sic). McQuarry seems to believe that "PATRICIA ANN MCQUARRY" (all capitals) is some kind of legal entity that is distinct from "Patricia Ann McQuarry" (initial

capitals), who is described throughout McQuarry's document as an "honorable soul." *Id*.

- McQuarry also recently sent several letters to the prosecutor in this case. Among other things, the letters (1) purport to define certain information as private, confidential, and proprietary, with the prosecutor being subject to a $1 million penalty if she violates this unilaterally imposed edict, *see* ECF No. 160 at 1; (2) purport to impose some kind of trusteeship on the prosecutor and the acting United States Attorney without their consent, *see* ECF No. 163; (3) purport to require the prosecutor and the acting United States Attorney to "perform and complete the specific trust duties" inherent in the unilaterally imposed trust, ECF No. 160 at 2; (4) state that "any interference with my right to self govern by oath takers trying to order me about or threaten me and interrupt with the proper function to self govern is terrorism," ECF No. 163 at 3; (5) purport to order the prosecutor to immediately withdraw this criminal case "from the public forum," drop all criminal charges, and destroy all criminal records in this case, ECF No. 160 at 7; and (6) purport to require the prosecutor and the acting United States Attorney to appear at a "Special Proceeding" to be held in a "court of exclusive original jurisdiction in equity . . . .," ECF No. 163 at 8. This kind of rhetoric — especially labeling prosecutors as "terrorists" and demanding that prosecutors appear before some kind of "court" that does not exist within the federal or state government — goes beyond the rhetoric typically used by tax protesters and instead is similar to the language used by those who have been imprisoned for

obstructing justice or threatening public officials. *See, e.g.*, *United States v. Beale*, 620 F.3d 856 (8th Cir. 2010).

Moreover, unlike many tax protesters, McQuarry appears to actually believe the frivolous arguments that she is making — not only to believe them, but to have become quite emotionally invested in them. In the Court's experience, some tax protesters do not appear to believe many of the arguments that they make, but appear instead to be trying to find some kind of a "loophole" to escape being held responsible for not paying taxes. Other tax protesters appear to be quite sincere, but they can at least carry on a rational conversation about their beliefs. They make arguments in a respectful and understandable way and, when their arguments are rejected, they accept the fact that the court has ruled and move on. But McQuarry appears to be unusually devoted to her views.

For example, at a hearing on the morning of January 21, 2014, McQuarry displayed great emotion — indeed, started weeping — in frustration over the prosecutor's unwillingness to accept her offers to "settle" this case. These "settlement" offers appear to consist of McQuarry purporting to give the government permission to take money that does not really exist out of a trust account that does not really exist. Rather than take the advice of a respected and experienced defense attorney, McQuarry seems to troll the fever swamps of the Internet and to regard what she reads there not merely as presenting possible loopholes that she can exploit, but as presenting the Gospel truth — even in the absence of any evidence that these arguments have ever been accepted by a court or resulted in the acquittal of a defendant.

McQuarry's comments at the January 21 hearing — and, more importantly, her many pro se filings — cause the Court to question whether she understands the nature of the

proceedings against her. The Court has explained on multiple occasions that this is a criminal case, in which the government is accusing McQuarry of violating a criminal statute. Yet no matter how many times this is explained to McQuarry, she persists in treating this case as a private dispute over an alleged debt — a dispute that could be "settled" if the government would just take the make-believe money out of the make-believe trust account. And, indeed, someone reading McQuarry's papers — with their repeated invocations of the ancient maxims of equity and citations to archaic sources — might think that this case was being tried in 1814 in the Court of Chancery.

McQuarry's demeanor before the Court has also become more erratic. As the Court has noted, McQuarry became highly emotional at the January 21 hearing, repeatedly interrupting the Court and weeping with frustration about the government's refusal to accept her offers to "settle." McQuarry has not before acted so emotionally during a hearing, but the government has informed the Court that McQuarry filed papers with the United States Supreme Court in which she threatened to commit suicide if she did not receive the relief she sought. Similarly, at the January 21 hearing, when the Court told McQuarry that it may have to order her detained because she rescinded her signatures on her appearance bond and on the order setting the conditions of her release [*see* ECF No. 144], McQuarry told the Court that it might as well "kill" her. These kind of statements are not typically made by competent litigants.

The Court is also concerned that McQuarry gives her own highly idiosyncratic meaning to ordinary English words. For example, McQuarry told the Court at the January 21 hearing that she could not "represent" herself in this proceeding because it would require her to "re-present" herself as a human being, which, in turn, would somehow offend God. McQuarry's use of the

English language is so idiosyncratic that it is difficult for the Court to carry on a conversation with her, because the Court is never certain what she is saying.

Taken as a whole, McQuarry's behavior has raised sufficient doubt whether she lacks "a rational as well as factual understanding of the proceedings against [her] . . . ." *Ghane*, 593 F.3d at 780 (quotation omitted).

### 2. Ability to Consult with Defense Counsel

In order to be deemed competent to stand trial, a defendant must not only be able to understand the proceedings against her, but she must also be "able to consult with [her] lawyer with a reasonable degree of rational understanding." *Id*. (quotation omitted).

Attorney Daniel L. Gerdts was appointed to represent McQuarry at the commencement of this case. *See* ECF No. 18. Gerdts is an experienced and respected member of the criminal-defense bar. Soon thereafter, McQuarry informed the Court that she intended to represent herself. *See* ECF No. 49. The Court granted her request after conducting a *Faretta* hearing, but ordered Gerdts to act as standby counsel for McQuarry.

On January 21 — after the morning hearing to which the Court has already alluded — McQuarry filed a motion asking that Gerdts again be appointed to represent her. *See* ECF No. 155. The Court conducted a hearing on that motion on the afternoon of January 21, and McQuarry confirmed at that hearing that she no longer wanted to act as her own attorney, but instead wanted Gerdts to be reappointed to represent her. The Court granted McQuarry's motion and reappointed Gerdts to act as her attorney. *See* ECF No. 165.

The Court has already described much of McQuarry's recent behavior. That behavior has caused the Court to be concerned not only that McQuarry does not understand the nature of these

proceedings, but also that she will not be able to consult with Gerdts with a reasonable degree of rational understanding. For example, the difficulty that the Court has had communicating with McQuarry because of the idiosyncratic meaning that she assigns to words — and the difficulty that the Court has had persuading McQuarry that the ancient maxims of equity have nothing to do with this modern criminal prosecution — are likely to be experienced by Gerdts.

At the hearing on the afternoon of January 21, the Court asked Gerdts for his thoughts about whether a competency hearing should be ordered for McQuarry. Although Gerdts was careful not to reveal any privileged communication, he said that he would not oppose such a hearing, and he acknowledged that the Court's concerns were justified. An attorney's expression of concern about his client's competence is a factor that the Court must consider in deciding whether to order a competency hearing. *Cf. Edwards v. Roper*, 688 F.3d 449, 462-63 (8th Cir. 2012); *Reynolds*, 86 F.3d at 800.

### 3. Conclusion

In sum, the Court finds that three of the factors identified by the Eighth Circuit for determining whether sufficient doubt exists as to a defendant's competency are present in this case. McQuarry has behaved irrationally; her demeanor has worsened over time; and her counsel has agreed that a competency hearing might be warranted. (The final factor — any prior medical opinions as to the mental competency of the accused — does not apply, as the Court is not aware of any such opinions.) Accordingly, pursuant to 18 U.S.C. § 4241(a), the Court orders that a hearing be held to determine whether McQuarry is competent to stand trial. *See also* 18 U.S.C. § 4247(d) (describing competency hearing, including right of the accused "to testify, to present

evidence, to subpoena witnesses on [her] behalf, and to confront and cross-examine witnesses who appear at the hearing.").

### B. *Psychiatric or Psychological Examination*

Section § 4241(b) of Title 18 of the United States Code provides that "the court may order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court" in anticipation of a competency hearing. *See also* Fed. R. Crim. P. 12.2(c)(1)(A) ("The court may order the defendant to submit to a competency examination under 18 U.S.C. § 4241."). For the reasons explained above, the Court finds that such an examination is warranted in this case.

### ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendant Patricia Ann McQuarry undergo a psychiatric or psychological examination pursuant to 18 U.S.C. § 4241(b). That examination must be conducted by a licensed or certified psychiatrist or psychologist — or, if appropriate, by more than one such examiner — in accordance with 18 U.S.C. § 4247(b)-(c).

2. McQuarry is committed to the custody of the Attorney General for placement in a facility suitable for the psychiatric or psychological examination. That facility must be as near as practicable to the Court. McQuarry's commitment must last for only a period reasonable for conducting the examination, not to exceed

      30 days.  The director of the facility may apply for a reasonable extension not to exceed an additional 15 days.

3. The report prepared by the examiner designated to conduct the psychiatric or psychological examination must be filed with the Court under seal, with copies provided to counsel for McQuarry and the government.  That report must include:

    a. McQuarry's history and present symptoms;

    b. A description of the psychiatric, psychological, and medical tests that were employed and the results of those tests;

    c. The examiner's findings; and

    d. The examiner's opinions as to diagnosis, prognosis, and whether McQuarry is suffering from a mental disease or defect rendering her mentally incompetent to the extent that she is unable to understand the nature and consequences of the proceedings against her or to assist properly in her defense.

4. Upon receipt of the report, the Court will schedule a hearing to determine McQuarry's competence to stand trial.

Dated: January 27, 2014

s/Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge